# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**EDWARD WILLS II,**

            Plaintiff,

      **-vs-**                          **Case No. 14-C-960**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

            Defendant.

---

# DECISION AND ORDER

---

Plaintiff Edward Wills II appeals the denial of his applications for social security disability insurance benefits and supplemental security income (SSI) benefits. The Court is reviewing the determination of the Administrative Law Judge (ALJ) who, having conducted a hearing, found that Wills has the following severe impairments: status post right ankle fractures, status post Achilles tendon rupture, right hand impairment, degenerative disc disease, and mental impairments of bipolar disorder, polysubstance abuse, alcohol abuse, depressive disorder, psychosis not otherwise specified, and anti-social personality disorder. (Tr. 23.) She further found that Wills' impairments do not meet or equal any medical listing, including those found in §§ 1.00 or 12.00 of the Listing of Impairments of 20 C.F.R. Part 404, Subpart P, App. 1. She further found

that Wills has the residual functional capacity (RFC)[1] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with limitations of frequent but not constant handling and fingering; simple, routine and repetitive work tasks involving simple work-related decisions; no public contact; only occasional contact with co-workers and supervisors; and no production-rate paced work. (Tr. 26.) Thus, she determined that Wills was not disabled.[2]

Wills requested that the Appeals Council review the ALJ's decision, and he submitted additional evidence for consideration. (Tr. 1.) The Council summarily declined to engage in plenary review of the ALJ's decision, making it the final determination of the Commissioner. (Tr. 1-3.) 20 C.F.R.

---

[1] "(RFC) is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (Citations omitted). *see also* 20 C.F.R. §§ 404.1545(a)(1); 404.1520(a)(4)(i-v).

[2] The Social Security Administration (SSA) applies a similar five-step analysis to social security disability insurance benefits and SSI claims. With respect to SSI claims, the SSA considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. It determines whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement. The SSA compares the impairment (or combination of impairments) found at step two to a list of impairments identified in the regulations ("the Listings"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or are "medically equal" to a Listing, he is considered disabled, and the analysis concludes; if a Listing is not met, the analysis proceeds to the next step. The SSA considers the claimant's RFC and past relevant work. If the individual can perform his past relevant work, he is found to be not disabled. If not, the SSA considers the claimant's RFC, age, education, and work experience to see whether the claimant can make the vocational adjustment to other available work in significant numbers within the national economy. If the claimant can make the adjustment, he is found to not be disabled; if not, the claimant is found to be disabled. 20 C.F.R. § 404.1520(a)(4); *see also Weatherbee v. Astrue*, 649 F.3d 565, 568-69 (7th Cir. 2011).

§ 404.981; *Schomas v. Colvin,* 732 F.3d 702, 707 (7th Cir. 2013).

Wills contends that the ALJ (1) improperly evaluated the medical opinions regarding functional limitations due to his mental disorder, which impacted his RFC determination and the hypothetical presented to the vocational expert (VE); (2) improperly evaluated his credibility and his RFC; and (3) posed an incomplete hypothetical to the VE. In addition, Wills contends that the evidence submitted to the Appeals Council is new and material and requires remand.

To uphold the denial of benefits, the ALJ's decision must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). To determine whether substantial evidence exists, the Court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley v. Colvin,* 758 F.3d 834, 836-37 (7th Cir. 2014).

The ALJ must articulate, at least minimally, her analysis of all relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and "the [ALJ's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues," *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Additionally, the ALJ must "build an accurate and

- 3 -

logical bridge from the evidence to his conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

An ALJ's credibility determination is entitled to "special deference." *Schomas,* 732 F.3d at 708. The Court will reverse an ALJ's credibility finding only if it is patently wrong. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

### Evaluation of Medical Evidence

Wills contends that the ALJ improperly evaluated medical opinion evidence, indicating that 20 C.F.R. §§ 404.1527(b)-(c) and 416.927(b)-(c) and Social Security Ruling (SSR)[3] 96-6p, 1996 WL 374180, at * 1, provide that "in deciding whether an individual is disabled, the adjudicator will always consider the medical opinions in the case record together with the rest of the relevant evidence." (Pl. Br. 8, ECF No. 19.) He also asserts that the ALJ did not follow the criteria in evaluating medical sources because she did not cite applicable factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d) as required by SSR 96-5p. (*See* Pl. Br. 9; *see also* Pl. Reply Br. 3, ECF No. 24.)

While this argument is broadly stated, Wills focuses on the ALJ's treatment of the opinions of non-examining state agency psychologists Beth Jennings, Ph.D., and Eric Edelman, Ph.D., and that of Robert Bass, M.D.

---

[3] These rulings are binding on ALJs. *Lauer v. Apfel,* 169 F.3d 489, 492 (7th Cir. 1999).

- 4 -

The ALJ addressed the medical opinions regarding Wills' mental health issues summarizing as follows:

> Drs. Jennings and Edelman opined that the claimant is capable of performing the basic mental demands of unskilled work with limited public contact and limited contact with coworkers and supervisor (Exs. 5A; 13F). The opinions of Drs. Jennings and Edelman are consistent with the overall record, including the claimant's mental health treatment history, performance on mental status examinations, and documented improvement with medication. Further, their opinions are largely consistent with the observations of the consultative psychologist examiners, Drs. Polczinski and Ertl (Ex. 8F).

(Tr. 31.) The ALJ further elaborated that psychologist Jeffrey Polczinski, Psy.D., who saw Wills for a mental status evaluation, opined that Wills has adequate ability to understand at least mildly complex instructions, adequate memory for routine tasks, and intact attention and concentration. (Tr. 31.) She also cited Polczinski's finding that although Wills understands appropriate social discourse, his characterological deficits and irritability would likely adversely affect relationships. (*Id.*) The ALJ also noted Polczinski's conclusion that Wills had a poor ability to handle change and/or stress. (*Id.*) The ALJ expressly stated that she gave less weight to Polczinski's opinion that Wills' perseverance may be adversely affected by depressive tendencies because the record reflects that Wills' symptoms improve when he takes his medication and abstains from substance abuse. (Tr. 32.)

- 5 -

The ALJ also noted that Richard J. Ertl, Ph.D., a psychologist, opined after a consultative examination that based on his mental status examination, Wills would be expected to be able to understand, remember, and carry out simple instructions. (Tr. 31.) The ALJ further noted Ertl's conclusion that with psychiatric medication, Wills' ability to relate to others would be much improved; he would be able to maintain concentration, attention, and work pace; and he would have a normal ability to withstand routine work stressors and adapt to changes on the job. (Tr. 31-32.) The ALJ considered the factors required by the regulations and adequately articulated her reasons for giving more weight to the opinions of the two non-treating psychologists.

Wills argues that the ALJ improperly applied the opinions of Jennings and Edelman regarding activities of daily living; social functioning; concentration, persistence and pace; and decompensation. The Commissioner states that the argument is without merit. With respect to Jennings' findings in the Mental Residual Functional Capacity Assessment (MRFCA) form, the Commissioner counters that "[a]gency policy and the instructions on the form are clear that psychological consultants must express the claimant's work-related limitations of function in narrative form in section III of the MRFCA form (Tr. 509-10), and that section I (Tr. 507-508) is merely a 'worksheet to aid in deciding the presence and degree of functional limitations and the

adequacy of documentation.' POMS DI 24510.060," citing *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002).[4]  (Def. Mem. 3, ECF No. 23.)

*Varga* states "[t]his circuit has declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE." 794 F.3d at 816 (citing *Yurt v. Colvin,* 758 F.3d 850, 858 (7th Cir. 2014).)  Nonetheless, the circuit held "*in some cases*, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Id.* (Emphasis added.)

Jennings completed the checkbox portion of MRFCA form, indicating that Wills had moderate limitation in daily activities; marked limitation in social functioning; mild limitation in concentration, persistence, and pace; and one or two episodes of decompensation. (Tr. 503.)  In addition, she completed the narrative portion of the form.  After summarizing Wills' background, the results of two consultative examinations, and Wills' hospitalization and follow-up at the Medical College of Wisconsin, she opined

---

[4] The Commissioner also cites *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) which held that an ALJ was not required to include findings noted in Section I of the MRFCA form that the claimant was moderately limited in various areas of mental functioning because Section I is merely a worksheet to aid doctors in deciding the presence and degree of functional limitations. However, the Seventh Circuit Court of Appeals has expressly declined to follow *Smith. Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015).

that Wills "has the ability to perform a range of at least low skill occupations. He should avoid occupations with freq[uent] public contact or contact with [large] groups, due to his anger and irritability. He has been actively searching for jobs." (Tr. 510.) Edelman completed a Disability Determination Explanation Form indicating that Wills had moderate limitations in daily activities; social functioning; and concentration, persistence, and pace; and one or two episodes of decompensation. (Tr. 118.)

Wills argues that the ALJ's conclusions at step two were inconsistent with the findings of Jennings and/or Edelman and that the ALJ erred when she did not accept Jennings or Edelman's opinions and did not explain why.

At step two, the ALJ indicated that Wills had no limitation in daily activities; moderate limitation in social functioning; moderate limitation in concentration, persistence, and pace; and one to two episodes of decompensation, each of extended duration. (Tr. 24-25.) With regard to activities of daily living, the ALJ noted that Wills reported spending time looking for employment, doing volunteer work, hanging out with friends, watching television and doing chores. Although Wills reported needing reminders, he admitted tending to his personal care independently. Therefore, the ALJ concluded the record demonstrated that Wills' mental impairments did not cause any restriction in his daily activities. This finding differs from the moderate limitations found by Jennings and Edelman.

- 8 -

However, Edelman remarked that Wills was "able to count change and pay bills, able to leave the home alone and use public transp[ortation]." (Tr. 119.) The ALJ also noted a conflict between Wills' reports of limited activities and the overall record, which demonstrated that mental impairments did not cause restrictions in his daily activities. (Tr. 25.) The ALJ concluded that Wills' medically determinable impairments could cause his symptoms, but his claim as to the intensity and impact on function was not consistent with the totality of the evidence. (Tr. 27-29.) Contrary to Wills' contention, the ALJ adequately articulated her reasons for finding that his daily activities were not limited, and those findings are supported by substantial evidence.

In social functioning, the ALJ discussed Wills' anti-social behavior and noted that it had been observed by mental health providers. However, the ALJ concluded that Wills' documented daily activities and the fact that treating physicians described him as cooperative and calm when compliant with his medication warranted a finding of moderate limitation. This, again, differs from Jennings' finding of marked limitations, but it is consistent with Edelman's finding of moderate limitation. The ALJ cited the reasons for her determination, and Edelman's finding provides substantial evidence to support it.

When discussing Wills' concentration, persistence, and pace, the ALJ noted that Wills reported an inability to concentrate for more than three

- 9 -

minutes. However, she indicated that Wills' documented daily activities required some degree of concentration. This, together with the reports of examining providers indicating that Wills had good concentration and attention and consistently displayed linear and goal-orientated thought process and good memory—even when depressed or irritable—were the basis for her finding of moderate limitation. This finding is consistent with Edelman's finding, exceeded that of Jennings, and is supported by substantial evidence.

The ALJ found that Wills had experienced one to two episodes of decompensation, each of extended duration. In addition, there had been two more recent hospitalizations—not of extended duration—and on both occasions Wills had been noncompliant with medications on intake but was discharged in stable condition. This is consistent with the findings of both Edelman and Jennings.

With respect to Bass' opinion, a treating physician's opinion is generally given controlling weight if it is well-supported and not inconsistent with other substantial evidence in the record. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). More weight is given to treating sources because they are likely to be the medical professionals most able to provide a detailed longitudinal picture, and they bring a unique perspective to medical evidence that individual, consultative, or brief hospitalizations may not. *See* 20 C.F.R.

- 10 -

§§ 404.1527(c)(2); 416.927(c)(2). If a treating source's opinion on the issue(s) of the nature and severity of impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence, it is given controlling weight. *See id.* When a treating source is not given controlling weight, the ALJ considers the following: (1) the length, nature, and extent of the treating relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and supportability of the physician's opinion. *See Scott*, 647 F.3d at 740.

Wills contends that the ALJ committed legal error when she did not give sufficient weight to Bass'[5] opinion, citing *Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014) ("[A]n ALJ 'should give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant].'"). (*See* Pl. Br. 10.) Bass reported that Wills had "enough problems for disability permanent." (Tr. 632.)

The ALJ noted that the record shows only one visit with Bass—on the day his opinion was rendered—and that Bass' treatment notes contain a list of "subjective complaints/reported medical history," rather than documenting

---

[5] Nothing in the record indicates Bass' specialty. His note is written on medical record stationery for "Repairers of the Breach." The fax cover letter page and logo indicate it is a medical and outreach clinic for the indigent at 1335 West Vliet Street, in Milwaukee, Wisconsin. (*See* Tr. 635.)

- 11 -

an objective physical examination. (Tr. 31.)  "[I]f the treating physician's opinion is . . . based *solely* on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008) (emphasis added).  *See also*, *Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004) (holding that "medical opinions upon which an ALJ should rely . . . [ought] not amount merely to a recitation of a claimant's subjective complaints").  Substantial evidence supports the ALJ's determination that Bass's one-page note does not satisfy the criteria of 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii) and 416.927(c)(2)(i)-(ii).[6]  The ALJ discussed issues required by the regulations and gave "little weight" to Bass' opinion because it lacked the characteristics required of a treating physician. *Elder v. Astrue,* 529 F.3d 408, 416 (7th Cir. 2008) (holding that a treating physician who opines a diagnosis without a corroborating medical examination, and who is not a specialist in the field, was not entitled to more weight); *see also Simila v. Astrue,* 573 F.3d 503, 514 (7th Cir. 2009) (holding that a physician who does not have an ongoing relationship with the patient is not deemed a "treating source").

Wills implies that Bass' opinion was not given proper weight because

_____

[6] Although the Commissioner cites *Dixon,* 270 F.3d at 1178, which states that an ALJ may reject a doctor's opinion if it appears to be based on a claimant's exaggerated subjective allegations, Dixon's "exaggerated subjective allegations" was not the reason given by the ALJ for discounting Bass' opinion.

- 12 -

the ALJ improperly discounted subjective symptoms, citing *Korzeniewski v. Colvin*, No. 12 C 6895, 2014 WL 1457854, at *7 (N.D. Ill. Apr. 14, 2015) ("All diagnoses, particularly those involving mental health conditions, require consideration of the claimant's subjective symptoms"). (*See* Pl. Reply Br. 3.) In *Korzeniewski,* which is not binding on this Court, the court held that an ALJ improperly discounted the opinion of a treating physician, finding that the "opinion was 'colored by the claimant's subjective complaints' because the doctor completed the questionnaire shortly after the claimant's suicide attempt." *Korzeniewski,* 2014 WL 1457854, at *7. Here, Bass' opinion did not satisfy the criteria to be considered that of a treating physician. Opinions that merely state conclusions are not medical opinions and encroach on the ALJ's role. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Therefore, substantial evidence supports the ALJ's determination that Bass' opinion was not entitled to "treating source" controlling weight.[7]

In sum, this Court concludes that the ALJ did not err as a matter of law, that she adequately articulated her reasons in assessing the medical evidence from examining and non-examining physicians, and that her

---

[7] Wills also argues that the ALJ was required to contact Bass for clarification, citing SSR 96-5p, 1996 WL 374183, at *6 ("[b]ecause treating source evidence . . . is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to re-contact the source for clarification of the reasons for the opinion."). However, based on the ALJ's determination that Bass is not a treating source, SSR 96-5p does not apply.

- 13 -

conclusions are supported by substantial evidence.

## Credibility and RFC Assessments

Wills maintains that the ALJ's credibility assessment is improper and that the ALJ articulated the credibility determination via a "boilerplate" statement, making the analysis deficient. (Pl. Br. 17.)

However, if the ALJ has otherwise explained her conclusion adequately, the inclusion of this boilerplate language can be harmless. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012). In this case, the boilerplate excerpt is merely the beginning of a long discussion comparing Wills' objective medical records, examination results, and episodes of non-compliance with psychiatric medications to his allegations of limitations. Nearly three pages of the ALJ's decision discuss inconsistencies between Wills' complaints and examining and or treating physicians' observations.

The use of boilerplate is not a ground to remand if the ALJ justified her credibility assessment based on the evidence. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016). In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, and justify her finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The ALJ must "competently explain" any adverse credibility finding

- 14 -

"with specific reasons supported by the record." *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015). Furthermore, in analyzing the evidence, the ALJ is not permitted to cherry-pick, ignoring the parts that conflict with her conclusion. *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009). While an ALJ is not required to mention every piece of evidence, "[s]he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2000).

In making her credibility evaluation with respect to Wills' mental impairments, the ALJ relied on multiple factors. She cited the conflict between Wills' reports of limited activities and the overall record, which demonstrated that mental impairments did not cause restrictions in his daily activities. (Tr. 25.) The ALJ noted that Wills had voluntarily sought emergency treatment for depression on multiple occasions and those episodes had been accompanied by substance use and medication non-compliance.[8] (Tr. 28.) The ALJ also noted Wills' access to relatively consistent medical management, but that treating providers indicated a history of non-compliance with prescriptions. (*See* Tr. 452, 470-71, 29.) The ALJ also

---

[8] For example, the ALJ cited a March 2011 hospitalization after Wills threatened to kill his ex-girlfriend. She noted that he was intoxicated and had not been taking his psychiatric medications, and that Dr. J. Robles, M.D., who treated Wills, documented that his condition improved "quickly" after three days of treatment with psychiatric medication. (See Tr. 446.) The ALJ cited Wills' condition upon discharge, including his GAF of 65 (see Tr. 447), as demonstrating that with proper medication and abstaining from substance abuse, Wills' mental impairments result in only mild difficulty with social or occupational functioning. (Tr. 28-29.)

- 15 -

discussed treating physicians' observations that Wills' symptoms improved when he took his medications and abstained from substance abuse. (Tr. 28.) Additionally, the ALJ found that Wills' credibility was undermined by multiple notations in the treatment records about possible exaggeration of symptoms for secondary gain.[9] (Tr. 30.) Steiner's June 2011 report stated that Wills was "still searching for IT position." (Tr. 520.) The ALJ interpreted this as indicating that as of at least 2011 Wills thought he could work, undermining his credibility about his inability to work as of October 2008. (Tr. 30.) The ALJ further noted that during Wills' long-standing history of mental impairment, he had maintained employment, with his most recent employment from 2000 to 2008 including skilled work and supervising six employees. (Tr. 29.) In addition, she noted that he was terminated from work for reasons unrelated to the symptoms of his mental impairment. (*Id*.)

Wills asserts that in determining his RFC, the ALJ misapplied Jennings and Edelman's opinions by overlooking evidence of limitations.

_____

[9] The ALJ cited Polczinski's comment that Wills may have minimized his use of alcohol, and that his presentation regarding hallucinations suggested some exaggeration (Tr. 440); George Lind, M.D.'s comment that during hospitalization Wills' "manner was somewhat manipulative and there seemed to be evident secondary 'gain,'" and that each time Wills was interviewed, "he repeatedly mentioned that he needed disability payments restored" (Tr. 420); and several statements by Wills' treating psychiatrist, Kimberly B. Steiner, M.D. (citing a comment that Wills' "psychotic symptoms per chart have been also suspicious during prior treatment intervals . . . for malingering" (Tr. 468), and she "[could not rule out] secondary gain as motivation for [Wills'] presenting for treatment" (Tr. 471), and comments that during an appointment Wills initially said he was taking his medications and later said that he had not been taking them (Tr. 470), and a note that Wills made rocking motions during the interview which were not observed in the waiting room (*Id*.).

- 16 -

Wills' treating and examining physicians noted that many of his mental limitations correlated with medication non-compliance, substance abuse, and possible malingering or secondary gain. (Exs. 5A, 12F, 13F.) The ALJ discussed the difference in Wills' RFC when he remained on medication and avoided substance abuse. (Tr. 31-32.) The ALJ also discussed Wills' Global Assessment of Functioning scores over time, noting that low scores were during periods of substance abuse or non-compliance and that Wills' perseverance improved with medication and abstaining from substance abuse. The ALJ discussed Polczinski's opinion that Wills could understand at least mildly complex instructions and that his memory for routine tasks and his attention and concentration were intact. The ALJ also considered the testimony of Wills' girlfriend.

Jennings noted moderate limitations in Wills' ability to carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine; work in coordination and proximity to others; complete a normal workday without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 507-08.)

Jennings concluded that Wills' symptoms were not wholly consistent with evidence in the file and his statements about his symptoms and their

functional effects were only partially credible. (Tr. 510.) Jennings gave specific examples of Wills' complaints of limitations, but found that Wills had the ability to perform at least low skill occupations with infrequent contact with the public. *(Id.)*

Edelman's RFC assessment found no limitations in memory, but he did find moderate limitation in the ability to carry out detailed instructions; perform within a schedule, maintain regular attendance and punctuality; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others; and complete a normal work day. Edelman concluded that Wills had moderate limitations in concentration, persistence, and pace; and social limitations in the ability to interact appropriately with the public, accept instruction and criticism, and get along with coworkers. (Tr. 119-20.)

The ALJ concluded that Wills was not entirely credible given the inconsistency between his reports concerning the "intensity, persistence and limiting effects of his symptoms and the objective evidence documenting his response to treatment and his  activities of daily living, which showed him to be a reasonably functional individual," stating:

> In sum, the above [RFC] assessment is supported by the overall record, including the opinions of Drs. Khorsidi [sic], Shaw, Jennings, Edelman, Polczinski and Ertl. The undersigned's review of the record indicates that the objective medical findings are not consistent with a finding of total disability. Rather, the claimant

- 18 -

benefits from medication compliance and has been able to manage a range of daily activities and functioning. The undersigned finds the claimant remained capable of performing a range of light work with appropriate accommodation for the symptoms of his physical and mental impairments, as described in the [RFC] finding herein.

(Tr. 32.) The ALJ's RFC included limitations for avoiding detailed instruction or public contact, only occasional contact with co-workers and supervisors, and no production-rate paced work. (Tr. 26.) Here, unlike *Yurt v. Colvin,* 758 F.3d 850, 858 (7th Cir. 2014), where the ALJ disregarded opinions because they were inconsistent with her own, most of the source opinions acknowledge at least one of the following issues with Wills' impairments: non-compliance, substance abuse, secondary gain, exaggeration, credibility issues, and possible malingering.

Wills contends that the credibility determination was defective because the ALJ failed to consider Wills' lack of insurance and the side-effects of medications as the basis of his non-compliance with medications. The Commissioner contends that the ALJ did not "specifically find Wills less than credible because of noncompliance with medications," because she cited both non-compliance and substance abuse as reasons Wills required treatment. (Def. Mem. 10.)

"[T]he failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue,* 675

- 19 -

F.3d 690, 696 (7th Cir. 2012). An ALJ may need to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Id.* (quoting SSR 96–7p, 1996 WL 374186, at *7.) The claimant's "good reasons" may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects. *Id.*

Additionally, there may be a relationship between bipolar disorder and substance abuse. *See Kangail v. Barnhart,* 454 F.3d 627, 629 (7th Cir 2006) (noting that bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate his symptoms.) Furthermore, "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment." *Id.* at 630.

At the hearing, the ALJ questioned Wills regarding his medications and how long he had been taking them. (Tr. 67-71.) She also asked Wills if the medications had any side effects. (Tr. 78.) Wills testified that the medications did not have side effects (*id.*); however, a disability appeal report completed by Wills' friend indicates that Trazadone caused drowsiness. (Tr. 332.) Wills also testified that the medications did not help because he still heard voices, talked to himself, had trouble sleeping, was depressed, had

- 20 -

crying spells, did not socialize and was not very trusting of people.  (Tr. 71.)

Wills also indicated that he drank alcohol and ingested cocaine.  (Tr. 72-73.)

However, the ALJ did not question Wills about the reason for his alcohol and

cocaine use.  She also asked no questions regarding his failure to consistently

take his prescription medications for his mental health impairments.

Wills also alluded to an inability to obtain medical care.  (Tr. 64-65.)

The ALJ asked whether Wills went to free medical clinics (Tr. 65), but she

asked no additional questions regarding his ability to afford treatment.

Absent questioning or exploration of these issues, the ALJ cannot draw a

negative inference.  Thus, this case must be remanded to allow the ALJ to

properly address the issue. *Beardsley,* 758 F.3d at 840 (citing *Craft v. Astrue,*

539 F.3d 668, 679 (7th Cir. 2008); SSR 96-7p).

## Vocational Expert Hypothetical

Wills maintains that the ALJ's hypothetical to the VE was incomplete

because it did not include a limitation to simple, routine, and repetitive work

tasks and did not include Wills' limitations with respect to concentration,

persistence, and pace, citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619

(7th Cir. 2010).   The Commissioner admits that Wills' RFC limitation of

"simple, routine and repetitive work tasks involving simple work-related

decisions" was omitted from the hypothetical given to the VE.  (*See* Def. Mem.

5.)    However, the Commissioner contends that any error was harmless

- 21 -

because the VE testified that Wills could perform a significant number of unskilled jobs, citing transcript pages 95-96, 99, and all the jobs the VE identified actually included the omitted limitation.[10] The Commissioner also contends that the ALJ included other limitations in her RFC to accommodate for Wills' moderate limitations in concentration, persistence or pace.

An error in a social security determination is harmless when, considering the evidence in the record, a court "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding errors harmless when "it is predictable with great confidence that the agency will reinstate its decision on remand").

The ALJ asked the VE to assume a person able to perform at all exertional levels but no work requiring public contact, limited to occasional contact with co-workers and supervisors, no fast-paced production work, but an ability to perform goal-oriented work that allowed for variability in pace. (Tr. 95.) The VE identified jobs as a cleaner (DOT number 323.687-014), street cleaner (DOT number 955-687-018), and inspector (DOT number 559.687-074), all of which are light work. (Tr. 95-96.)

---

[10] The Commissioner's citation regarding harmless error combines the case name *Shramek v. Apfel* with the reporter citation of *Donahue v. Barnhart*. Based on content, the Commissioner apparently intended to cite *Donahue,* 279 F.3d 441, 444 (7th Cir. 2002) (remand not required for ALJ's failure to include plaintiff's shortcomings in concentration in hypothetical where vocational expert did not name jobs requiring steady concentration).

However, SSR 00-4p, 2000 WL 1898704, at *3, states:

> A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn). (See SSR 82-41.) . . . The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, *unskilled work corresponds to an SVP of 1-2; . . ..*

*Id.* (Emphasis added.) In determining whether describing a person as capable of "simple, routine, and repetitive tasks" captures limitations in concentration, persistence, or pace, *Varga,* 794 F.3d at 814, addresses "simple, routine, and repetitive tasks . . . 'unskilled work' which the regulations define as work which can be learned by demonstration in less than 30 days." In this case, the hypothetical did not include a limitation to simple, routine, and repetitive work, but the cleaner, street cleaner and inspector jobs cited by the VE and adopted by the ALJ have an SVP of 1: "[s]hort demonstration only," or 2 "[a]nything beyond short demonstration up to and including 1 month." *See* http://www.occupationalinfo.org/appendxc_1.html (last visited March 7, 2016). The ALJ also found that the jobs identified by the VE were representative "light, unskilled occupations." (Tr. 33.) Since unskilled jobs are by definition "simple, routine, and repetitive," the omission from the hypothetical of these limitations is harmless. *See Donahue,* 279 F.3d 444.

- 23 -

The Seventh Circuit has held that ALJs may not ignore checked boxes on the MRFC form, but must adequately account for limitations in concentration, persistence and pace. *Yurt*, 758 F.3d at 858-59. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot be ignored." *Varga*, 794 F.3d at 816. In addition, when no narrative documentation or translation by a doctor or agency RFC exists, "an ALJ's hypothetical question to the VE must take into account any moderate difficulties in mental functioning [from] the MRFCA form, *including those related to concentration, persistence or pace." See id*. (Emphasis added).

While the ALJ included Jennings' narrative translation in the hypothetical to the VE, that narrative does not exclude jobs that require concentration, persistence and/or pace. It also fails to otherwise accommodate Wills' moderate deficiencies in concentration, persistence and pace. Thus, on remand, the ALJ must revisit the step five analysis of whether a significant number of jobs are available to Wills in the national economy by including those limitations in the hypothetical.

### New and Material Evidence

Under 20 C.F.R. § 404.970(b), additional evidence submitted to the

- 24 -

Appeals Council will be evaluated only if it is "new and material"[11] and "relates to the period on or before the date of the [ALJ] hearing decision." *Stepp*, 795 F.3d at 721. If the newly submitted evidence satisfies these conditions, the Appeals Council shall incorporate that evidence into the administrative record and shall then evaluate that record, "including the new and material evidence." *Id*. (citing 20 C.F.R. § 404.970(b).) However, the Council will only grant de novo review of the ALJ's decision if it determines, based on the supplemented record, that the ALJ's conclusions are "contrary to the weight of the evidence." *Id*.

*Stepp*, decided after briefing of Wills' appeal was completed, examines how a court is to determine the grounds upon which the Appeals Council declined to grant plenary review. *Id*. at 722. If the Council determined that a claimant's newly submitted evidence was, for whatever reason, not new and material, and deemed the evidence "non-qualifying under the regulation," the courts retain jurisdiction to review that conclusion for legal error. *Id.* (citing *Farrell v. Astrue,* 692 F.3d 767, 771 (7th Cir. 2012); *Eads v. Sec'y of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir. 1993)). If the Appeals Council deemed the evidence new, material, and time-relevant, but denied

---

[11] Evidence is considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding," and it is considered "material" if there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered" in the first instance. *Stepp v. Colvin,* 795 F.3d 711, 721 n.2. (7th Cir. 2015) (Citation omitted).

- 25 -

plenary review of the ALJ's decision based on its conclusion that the record as supplemented does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence," the Council's decision not to engage in plenary review is "discretionary and unreviewable." *Id.* (citing *Perkins v. Chater,* 107 F.3d 1290, 1294 (7th Cir. 1997)). *Stepp* reviewed the Council's responses in *Farrell* and *Perkins* and concluded that the response in *Stepp* was more like that in *Farrell.*

*Stepp* noted that an ALJ denied Farrell's claim for benefits in part because the record did not contain evidence confirming that Farrell had been diagnosed with fibromyalgia, and in spite of additional evidence reflecting a firm diagnosis of fibromyalgia, the Appeals Council summarily denied Farrell's petition for review. *Id.* at 723. The Council explained that it had "considered . . . the additional evidence . . . [and] found that this information d[id] not provide a basis for changing the [ALJ's] decision." *Id.* (quoting *Farrell,* 692 F.3d at 771). This was standard boilerplate language, and was identical to the language of Stepp's denial notice. Analyzing that language, the court of appeals explained:

> this text, which often appears in orders of the Appeals Council rejecting plenary review, is not as clear as it might be. On the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result.

- 26 -

*Id.* Without more specific language from the Council, the appeals court interpreted the denial notice to imply the former conclusion—i.e., that the Council "rejected Farrell's new evidence as non-qualifying under the regulation." *Id.* The court then proceeded to review the "limited question" of whether the Council had erroneously concluded that the newly submitted evidence was not new and material. *Id.*

Wills argues that it was legal error for the Appeals Council to decline to review the ALJ's decision, citing *Farrell,* 692 F.3d at 771, and by reference, *Perkins,* 107 F.3d at 1296. (Pl. Br. 10-11.) The Commissioner counters that although the Council's language denying Wills' request for review was similar to that of *Farrell,* the Council also explicitly stated that it had considered "additional evidence." (Def. Mem. 13.) The Commissioner asserts that there was no error of law and there is no basis for reviewing the Appeals Council's discretionary decision to deny review, citing *Perkins.*

The Council's order contains the following language, "In looking at your case, [the Council] considered . . . the additional evidence listed on the enclosed Order of Appeals Council" (Tr. 1), and the Order lists Exhibit 24F, Outreach Community Health Center records dated February 19 through March 4, 2014 (Tr. 5). The Appeals Council's order and denial notice in Wills' case is similar to that in *Stepp,* 795 F.3d at 723, which states "while Stepp's case clearly falls somewhere on the spectrum between *Perkins* and *Farrell,*

we believe it is closer to *Farrell*. *Id*. at 725. Based on *Stepp,* the minimal information provided by the Appeals Council in its denial of Wills' request for review is insufficient to allow this Court "to determine with any confidence" that the Council accepted Fischer's notes and letter as new and material evidence. *Id*. Thus, the Court considers Wills' contention that it was legal error for the Council to refuse to review the additional evidence.

Wills filed an after-visit summary of Dr. Donald Fischer, M.D., a psychiatrist at Outreach Community Centers, and a letter from Fischer, which stated "[Wills] has been diagnosed with Paranoid Schizophrenia (in remission), Major Depressive Disorder, . . . and Unspecified Personality Disorder, making it difficult to navigate daily tasks." The letter indicated that Wills was being provided medication management, he had been a patient of the Centers since February 21, 2014, he would benefit from supportive permanent housing, and that Fischer "certified Mr. Wills meets the disability definition required by the Department of Housing and Urban Development." (Tr. 643.) Fischer states that the certification is attached to the letter.

These records are "new" because they were "not in existence or available to the claimant at the time of the administrative proceeding." *Perkins,* 107 F.3d at 1296 (citation and internal quotation marks omitted). The administrative hearing was held in November 2013. The ALJ's decision

- 28 -

was issued February 19, 2014, and addressed the question of disability from October 28, 2008, through the date of the decision. *Stepp*, 795 F.3d at 725. Evidence is "material" under § 404.970(b) if it creates a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Id.* (citation omitted). In this case, there is minimal evidence from treating psychiatrists or psychologists. Thus, Fischer's opinion that Wills' mental conditions make it difficult to navigate daily tasks is material within the meaning of § 404.970(b). On remand the ALJ should also reevaluate Wills' RFC in light of Fischer's opinion.

For the sake of completeness, the Court also addresses Wills' contention that Fischer's letter is a decision by another government agency that must be reviewed. (Pl. Br. 11-12.) He relies on SSR 06-03p, 2006 WL 2329939, at *6, which provides in relevant part:

> we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR [§§] 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

Fischer's opinion, addressed "To Whom It May Concern," was prepared on Wills' behalf for presentation to a government agency. It is not a decision of a governmental agency. Therefore, the Council was not required to consider it.

## Summary

- 29 -

This matter is remanded due to errors in the ALJ's credibility determination and the hypothetical to the VE. Upon remand, the ALJ must revisit her credibility determination with respect to Wills' failure to take mental health medications consistently, his ability to obtain medical care, and the connection, if any, between his substance abuse and his bipolar disorder. The revisited credibility determination may impact the ALJ's RFC determination, as may Fischer's opinion. Furthermore, in obtaining an opinion regarding whether a significant number of jobs are available to Wills in the national economy the ALJ must include moderate deficiencies in concentration, persistence and pace.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Wills' action for judicial review (ECF No. 1) is **GRANTED** to the extent that this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Decision and Order, and **DENIED** in all other respects; and,

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of March, 2016.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**

- 30 -